# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 934 | **DATE** | 1/21/2004 |
| **CASE TITLE** | Mark Cody vs. Taft Harris, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Defendants'' motion to dismiss (24-1) is granted in part and denied in part. Defendants' motion to dismiss with regard to Counts I,II,VII,VIII, and IX is granted, and denied with respect to Counts III, IV, V, and VI. Defendants motion to dismiss second amended complaint filed on 6/10/03 (15-1) is moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 22 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 31 |
| | Copy to judge/magistrate judge. | FHROC | 1/21/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | AG | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 2 2 2004

MARK CODY,

        Plaintiff,

v.

TAFT HARRIS and DONTRON, INC., d/b/a
CRAWFORD BROADCASTING CO.
a Texas Corporation,

        Defendants.

Case No. 03-CV-934

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Mark Cody filed a nine-count complaint against two defendants, Taft Harris and Dontron, Inc. (hereinafter "Dontron"). The defendants subsequently moved to dismiss all nine counts. For the reasons set forth below, we grant the defendants' motion with regard to Counts I, II, VII, VIII, and IX and deny the motion with regard to Counts III, IV, V, and VI.[1]

## BACKGROUND

For the purpose of a motion to dismiss, we accept all well-pled allegations as true. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). We therefore recite the facts as Cody presents them in his complaint.

---

[1] This court has jurisdiction over the action brought by Cody under 28 U.S.C. § 1332 (a)(1) because the amount in controversy exceeds $75,000, Cody, the plaintiff, is a citizen of Illinois, and the defendants are citizens of Indiana and Texas. The parties do not contest that venue is proper because the events giving rise to the claims took place within the Eastern Division of the Northern District of Illinois. 28 U.S.C. § 1391(b). Finally, the parties do not contest that Illinois law applies to each of the substantive claims presented by Cody.

In March 2001, the Crawford Broadcasting Company (which is owned by defendant Dontron, Inc., d/b/a Crawford Broadcasting Co., hereinafter "Crawford Studios") hired Plaintiff Mark Cody to work as the General Sales Manager for radio station WPWX. In October of 2001, while Cody was on paternity leave, he received a letter from Crawford Studios terminating his employment with WPWX. (Compl. ¶10.) Four days after Cody received the letter, an article appeared in *Inside Radio*, the radio industry's most widely distributed daily trade publication, falsely stating that upon his termination, "Cody was escorted from the [Crawford Studios] building, locks and codes were changed with the security present." (Compl. ¶11.) Either Defendant Taft Harris ("Harris"), WPWX's General Manager, or the management at Crawford Studios provided this false information to *Inside Radio* in order to damage Cody's reputation. *Id.* Cody claims that management at WPWX later directed its staff members to have no contact with Cody. He further alleges that management "openly and frequently disparaged" Cody during staff meetings. (Compl. ¶21.)

While employed at Crawford Studios, Cody had attempted to develop a website for WPWX-FM. (Compl. ¶9.) He informed Harris that the domain name, "www.WPWX.com" was available for purchase from its owner, William Slembarski. Crawford Studios declined to purchase the domain name. (Compl. ¶14.) After Cody's termination, in January 2002, Crawford Studios learned that the domain name, "www.WPWX.com" contained pornographic material and included distasteful comments about the radio station (that need not be repeated for the purposes of this opinion). During staff meetings the following week, Harris accused Cody of posting the offensive material on the website, stating that Cody "would not get away with it" and that Crawford was "going to get him." (Compl. ¶16.) As a result of Harris' comments, word spread throughout the radio industry that Cody was responsible for posting the material. Cody began to be "inundated with inquiries into his role in posting" the offensive material on the WPWX website. (Compl. ¶17.)

2

The following week, *Inside Radio* published an article about the website incident. The article quoted Harris as stating that the person who posted the information on the website had to be "a competitor or one particular ex-employee" and that the person had tried to extort $25,000 from the radio station in exchange for removing the material from the website. (Compl. ¶18.) Again, Cody received several inquiries as a result of the article from "colleagues in the industry expressing concern and asking why Crawford so vindictively pursued him." (Compl. ¶19.) Later that week, a website dedicated to media in Chicago (www.drewandjill.com) reported that "[r]umor has it a disgruntled employee of Dontron reserved the WPWX.com domain recently when the previous owner did not renew it." In fact, Cody did not post any of the offensive material onto the website. (Compl. ¶23.)

After the release of the second *Inside Radio* article, Cody had difficulty finding a job as a general manager of a radio station. Thus, in November 2001, Cody took a job as an independent contractor for WVON-AM. As part of his work with WVON, Cody brought the station's general sales manager, Dan Johnson, to Crawford Studios. During their visit, several Crawford Studios employees saw Cody and Johnson together. (Compl. ¶12.) A Crawford Studios employee subsequently telephoned Johnson and told him that he was banned from Crawford Studios forever because of his relationship with Cody. As a result of this telephone call, Cody's independent contractor relationship with WVON-AM fell apart in January 2002. (Compl. ¶13.)

In March 2002, Cody entered into an agreement with Central City Productions, Inc. (hereinafter "CCP.") CCP also had a business relationship with Crawford Studios. In May of 2002, Donald Jackson, CCP's Chief Executive Officer told Cody that Harris had accused Cody of "misrepresenting CCP's capabilities to prospective business partners" and of engaging in a personal vendetta against Harris. Harris subsequently directed Crawford Studios to terminate certain business relationships with CCP because of CCP's relationship with Cody. (Compl. ¶¶25-27.) As a result, CCP refused to advance Cody

3

payments that were due to him under their agreement. Cody alleges that termination of the payments were pretext to push Cody out of his agreement with CCP and that CCP wished to extinguish the agreement because of pressure exerted by Crawford Studios.

Cody then brought the present complaint alleging: 1) that the statements made by Harris at WPWX staff meetings about Cody constituted defamation *per se*; 2) that the statements made by Harris to *Inside Radio* regarding the WPWX website incident constituted defamation *per quod* and defamation *per se*; 3) that Harris and Dontron intentionally interfered in Cody's contract with CCP; and 4) that Dontron intentionally interfered in Cody's contract with WVON-AM. The defendants responded with the present motion to dismiss the complaint in its entirety.

## ANALYSIS

We are presented here with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See id.* at 1520-21; *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Counts I & II: Defamation *Per Se* for Statements Made at Staff Meetings

In Counts I and II, Cody alleges that Harris and Dontron (on the theory of *respondeat superior*) committed defamation *per se* by making statements at WPWX staff meetings accusing Cody of posting

the offensive material on www.WPWX.com. Specifically, Cody alleges that Harris stated that Cody "would not get away with it" and that Crawford Studios "was going to get him." The defendants argue that the claims should be dismissed because they fail to state a claim for defamation *per se*.

Before responding to the defendants' argument, Cody raises a procedural issue that he believes bars the motion to dismiss. Cody argues that, by answering the First Amended Complaint and by failing to include the claims that are similar to Counts I and II in their motion to dismiss the Second Amended Complaint, the defendants waived their right to bring a motion to dismiss Counts I and II of Cody's Third Amended Complaint.[2] The motion to dismiss with respect to Counts I and II presents a pure question of law, i.e., whether the statements made during staff meetings accusing Cody of putting offensive material on www.WPWX.com could constitute defamation *per se*. There is no question of fact involved, so allowing the parties to gather and present evidence will not change the analysis. Were we to find that the defendants waived their right to bring a motion to dismiss, defendants would presumably respond with an answer in which they alleged, as an affirmative defense, that the complaint fails to state a claim with respect to Counts I and II. Some time after that, either in the context of a summary judgment motion, a 12(c) motion for judgment on the pleadings, or at trial, we would again be faced with the identical question: do the statements alleged by Cody satisfy the requirements of defamation *per se*? Because this is a pure question of law, our decision would be the same whether considered today or later in the course of the litigation.

---

[2] For the purposes of this motion, we are dealing with Cody's Third Amended Complaint. In his First Amended Complaint, filed on December 31, 2002, Cody raised claims that were substantively similar to the present Claims I and II. The defendants did not move to dismiss those claims but instead answered his complaint, raising "failure to state a claim" as an affirmative defense. Cody again raised claims similar to the present Counts I and II in his Second Amended Complaint. That time the defendants did file a motion to dismiss, but chose not to request that the court dismiss those claims that were similar to the present Counts I and II. The defendants did not have an opportunity to answer the Second Amended Complaint because Cody requested leave to file the Third Amended Complaint before defendants could do so.

The purpose of a motion to dismiss is to save parties the time and expense of conducting discovery and going to trial on a matter that cannot succeed. *See Myers v. American Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982) (noting that the purpose of Rule 12 is to provide a simple method for asserting defenses while ensuring that those defenses are not used as a means of delay). Allowing a party to postpone consideration of a legal argument on the basis of a civil procedure technicality that is not even clearly established in the law runs contrary to this policy rationale. We therefore find it proper to consider whether Cody has stated a claim upon which relief can be granted in Counts I and II of his complaint.

In Counts I and II, Cody alleges that statements made by Harris in the WPWX staff meetings accusing Cody of placing offensive material on a website constituted defamation *per se*. A statement is defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her." *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). Normally, a plaintiff must plead actual damages to recover for defamation. In cases of defamation *per se*, however, the defendant's statement is considered so obviously harmful to the plaintiff that injury is presumed. *Id.* Illinois law recognizes five categories of statements as so obviously harmful to the plaintiff as to constitute defamation *per se*: 1) words that suggest the commission of a criminal offense; 2) words that suggest infection with a "loathsome communicable disease;" 3) words that suggest an "inability to perform or want of integrity in the discharge of duties of office or employment;" 4) words that "prejudice a party, or impute lack of ability, in his or her trade, profession or business;" and 5) false accusations of fornication and adultery. *Id.* at 1214-15 (citations omitted).

Cody claims that the statements made by Harris in the staff meeting accusing Cody of posting material on the WPWX website were defamatory *per se* because they satisfied the third and fourth

6

categories of obviously harmful statements. The defendants respond that because Harris' statements were made about conduct that occurred after Cody was terminated, they had nothing to do with his ability or integrity as the general manager of a radio station. They further argue that Harris' words did not prejudice Cody in his trade because they did not comment upon his ability to manage a radio station in the future.

To demonstrate that a defamatory statement falls into the third or fourth categories of obviously harmful statements (i.e., statements that either imputed an inability to perform or lack of integrity in the discharge of professional duties, or a lack of professional ability), a plaintiff must show that the defamatory statement related to him in his professional capacity. Thus, general allegations that a person lacks integrity in his personal life are insufficient to state a claim for defamation *per se*. Rather, a plaintiff must allege that a person lacks integrity in carrying out his professional functions. For example, in *Sangston v. Ridge Country Club*, a federal court applying Illinois law held that statements made by a manager accusing a former employee of dialing "900" numbers from his work phone did not constitute defamation *per se*. No. 92-C-1981, 1992 WL 317138, *4 (N.D. Ill. 1992). The court reasoned that the accusations had nothing to do with the plaintiff's ability as an employee, his integrity in carrying out his professional duties, or his ability to carry out such tasks in the future. *Id.* Although calling "900" numbers from work might suggest a lack of personal integrity, they did not suggest that the plaintiff was otherwise unprofessional or that he was unable to satisfactorily complete his assigned job tasks. The court thus concluded that the accusations did not indicate a lack of ability or integrity, or otherwise prejudice the plaintiff in his profession. *Id.*

Likewise, in *Parker v. House O'Lite Corp.*, an Illinois Appellate Court held that the president of a company committed defamation *per se* when she wrote letters accusing an electrical engineer of rigging bids on a construction project so that his brother-in-law would win a lucrative contract. 756

N.E.2d 286, 296 (Ill. App. Ct. 2001). In that case, the acts alleged by the person making the defamatory statement implied that the engineer lacked of integrity *in performing the duties of his office:* the plaintiff was accused of conducting one of his assigned tasks in an improper manner.

In this case, the conduct alleged by Harris has nothing to do with Cody's functions as manager of a radio station. As in *Sangston*, Harris' statements may have suggested that Cody lacked integrity in conducting himself after he was fired, but they did not touch upon Harris' ability to perform his job while employed at WPWX, nor did they suggest that Cody could not perform well at such jobs in the future. As such, they are not the types of statements that rise to the level of defamation *per se*.[3] We therefore find that Cody has failed to allege a claim of defamation *per se* with respect to the statements made by Harris during the staff meetings and dismiss Cody's complaint with respect to Counts I and II.

### B.    Counts III & IV: Defamation *Per Quod* for Statements Made to *Inside Radio*

In Counts III and IV, Cody alleges that statements made by Harris to *Inside Radio* regarding the WPWX website incident constituted defamation *per quod*.[4] Specifically, an *Inside Radio* article, entitled "WPWX Chicago Victimized by Ciber-Dirty Tricks," quoted Harris as saying that the creator

---

[3] The only case that Cody cites that seemingly supports his position is *Kumaran v. Brotman*, 617 N.E.2d 191 (Ill. App. Ct. 1993). In *Kumaran*, the court found that the plaintiff stated a cause of action for defamation *per se* where a newspaper article alleged that the plaintiff had brought several non-meritorious lawsuits to scam settlement money from defendants. The court concluded that the accusations contained in the article prejudiced the plaintiff in his profession as a substitute teacher "because a teacher would be expected to set a good example and function as a role model for his young, impressionable students." *Id.* at 199. In essence, the court concluded that because personal integrity was a job requirement for being a teacher, an article that falsely accused the plaintiff of lacking integrity could prejudice him in the discharge of his professional duties. In this case, Cody has made no claim that there is a special need for integrity (beyond what is required for any job) inherent in the job of general manager of a radio station or that the statements allegedly made by Harris touched upon his ability to perform his job in any way.

[4] Counts III and IV differ only in that Count III is alleged against Harris and Count IV is alleged against Donatron on the theory of *respondeat superior*. We thus consider Counts III and IV together for the purposes of this motion.

8

of the offensive website had to be "a competitor or one particular ex-employee" of WPWX. The article also reported Harris' claim that the perpetrator attempted to extort $25,000 from WPWX in exchange for taking down the website.

Defamation *per quod* exists where the defamatory character of "[a] statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning." *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1221 (Ill. 1996). To state a claim for defamation *per quod*, Cody therefore must plead and prove extrinsic facts to explain why the statement to *Inside Radio* defamed him. *Id.* To state a claim for relief, a plaintiff in a defamation *per quod* case must also plead special damages. *Id.* Pursuant to Federal Rule fo Civil Procedure 9(g), special damages must be pled with particularity.[5]

The parties disagree as to whether Cody satisfied Rule 9(g)'s particularity requirement in his complaint. Cody's complaint alleged the following:

> injuries to his reputation, personal humiliation, mental anguish and suffering. Specifically, Cody sustained the following pecuniary losses. . . A. Inability to obtain comparable employment in the industry as a General Sales Manager from the date of publication to the present, with a combined potential loss of gross annual income of $275,000, and lost fringe benefits; B. Loss of potential income of $435,000 from Central City Productions, Inc.; [and] C. Loss of potential income of $1,200.00 from the contract with WVON, plus a loss of future sales income.

(Compl. ¶ 51.)

---

[5]Although the parties base their arguments entirely upon Illinios law, the pleading requirements in federal diversity cases is governed by federal law. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). It is therefore Federal Rule of Civil Procedure 9(g) and not Illinois law that requires Cody to plead special damages *with particularity*. *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 271 (7th Cir. 1983) (citations omitted). Thus, the Illinois cases cited by the parties are not controlling on the issue of whether this complaint will survive a motion to dismiss for failure to plead with particularity.

Cody's allegations regarding "injuries to his reputation, personal humiliation, mental anguish, and suffering" are clearly not sufficient to state a claim for special damages because they do not claim that Cody suffered any pecuniary loss. *Action Repair, Inc. v. American Broad. Cos., Inc.*, 776 F.2d 143, 150 (7th Cir. 1985) (requiring a plaintiff to "demonstrate some actual pecuniary loss" to state a claim for special damages).

Although the remainder of Cody's special damages claims do involve pecuniary losses, the defendants argue that Cody has failed to demonstrate the causal link between those losses and the statements published in *Inside Radio*. Indeed, a complaint fails to plead special damages with particularity where the plaintiff fails to draw a connection between the defamatory statement and the damage alleged. *Id.* Simply because the plaintiff must draw the connection, however, does not mean that he has to prove it at the motion to dismiss stage. Rather, it is sufficient for a plaintiff to allege that loss of customers, sales, and business opportunities were a "natural and proximate result" of the allegedly defamatory statement. *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1200 (N.D. Ill. 1984). Here, Cody has done just that. Cody claims in his complaint that after the article was published he could not obtain employment as the general manager of a radio station and that two business contracts with which he was involved fell through.[6] He further alleges that these business losses occurred as a result of the *Inside Radio* article. Cody also assigned specific dollar amounts to each of these losses. *Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965) (holding that the specificity requirement is satisfied where a plaintiff provided "before and after" sales figures to demonstrate special

---

[6] Defendants point out that, according to the complaint, the contract between Cody and CCP was signed two months after the *Inside Radio* article first appeared. Although this fact is seemingly inconsistent with Cody's allegation that the contract was then later cancelled as a result of the article, the allegations are not inconsistent enough to completely bar Cody's claim. Cody could show at trial, for example, that CCP management did not find out about the *Inside Radio* article until *after* CCP entered into its contract with Cody and that it terminated its contract with Cody once it discovered the article.

damages). Other cases have found a complaint sufficient in its allegations of special damages where much less was alleged. *See Fedders Corp. v. Elite Classics*, 279 F. Supp.2d 965 (S.D. Ill. 2003) (denying a motion to dismiss where plaintiff alleged that the defamatory statement caused him lost profits and sales); *Timemed Labeling Systems, Inc. v. Medplus, Inc.*, No. 95-C-5148, 1996 WL 467262 (N.D. Ill. 1996) (holding allegations that a plaintiff lost "certain" customers as a result of a libelous letter was sufficient to satisfy particularity requirement). Cody has therefore alleged enough information to survive a motion to dismiss under federal pleading requirements.

C.  **Counts V & VI: Defamation *Per Se* for Statements Made to *Inside Radio***

In Counts V and VI, Cody claims that the statements made by Harris to *Inside Radio* regarding the WPWX website constituted defamation *per se*. As noted above, defamation *per se* occurs where a defendant's statement is considered so obviously harmful to the plaintiff that injury is presumed. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). Defendants argue that the statements made to *Inside Radio* cannot be considered "obviously harmful" to Cody because the article could refer to someone other than Cody.[7]

Illinois law requires dismissal of a complaint alleging defamation *per se* where the statement is reasonably capable of innocent construction. *Bryson v. News Am. Publications*, 672 N.E.2d 1207, 1215 (Ill. 1996). "The innocent construction rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning." *Id.* Pursuant to the rule, a plaintiff may not bring a claim of defamation *per se* where the allegedly defamatory statement

---

[7]As noted above, Illinois law recognizes five categories of statements as defamation *per se*, including words that suggest the commission of a criminal offense. *Bryson v. News Am.Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). Harris' alleged statements to *Inside Radio* satisfy the criminal offense category because they suggest that Cody committed extortion by refusing to take down the WPWX website unless Crawford Studios paid him $25,000.

11

"may reasonably be interpreted as referring to someone other than the plaintiff." *Id.* (quoting *Chapski v. Copley Press*, 442 N.E.2d 195 (Ill. 1985)).

The defendants argue that because the statements made to *Inside Radio* referring to "one particular ex-employee" do not mention Cody by name, they may be "reasonably interpreted as referring to someone other than" Cody. (Reply in Support of Motion to Dismiss at 6). Defendants base their arguments on cases such as *Heerey v. Berke*, in which an Illinois Appellate Court dismissed a claim for defamation *per se* on the grounds that the statement could have been reasonably interpreted as referring to someone besides the plaintiff. 544 N.E.2d 1037, 1041 (Ill. App. Ct. 1989). Illinois law imposes heightened pleading requirements in defamation *per se* cases where a plaintiff is not specifically named by the defamatory statement. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925 (7th Cir. 2003). Specifically, "where a libelous article *does not name the plaintiff*, it should appear on the face of the complaint that persons other than the plaintiff and the defendant must have reasonably understood that the article was about the plaintiff and the allegedly libelous expression related to her." *Bryson*, 672 N.E.2d at 1218 (emphasis in original). Contrary to defendants' assertions, however, this heightened pleading requirement does not apply in federal court. *Muzikowski*, 322 F.3d at 926. Cody need only meet the notice requirements of Federal Rule of Civil Procedure 8 in order to survive a motion to dismiss. *Id.* In other words, Cody's complaint will survive a motion to dismiss as long as he provided a "short and plain statement" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). Cody satisfied this requirement by alleging several facts that might lead a reasonable person to connect him with Harris' statement in the *Inside Radio* article that the person who posted the offensive material on the WPWX website was "one particular ex-employee." He pointed to Harris' statements made during WPWX staff meetings in which Harris accused Cody of putting the offensive material on the website. Cody also alleged that he was the person who had tried to negotiate the purchase of the

www.WPWX.com domain name when he was still employed with WPWX. Finally, he cited an earlier *Inside Radio* article which reported that Cody had been fired and escorted from WPWX offices. By presenting this information in his complaint, Cody made allegations sufficient to suggest that reasonable people reading the *Inside Radio* article would think that it was Cody who had posted the offensive material on the WPWX website.

Defendants' attempt to rebut these allegations with further facts listed in Cody's complaint fails because such factual arguments are not appropriate for purposes of considering the legal sufficiency of Cody's complaint on a motion to dismiss. *See Muzikowski v. Paramount Pictures Corp*, 322 F.3d 918 (7th Cir. 2003) (noting that while Illinois courts treat the innocent construction rule as a question of law to be determined by a judge, it is a fact question in federal court, to be assessed by a jury). We therefore deny the defendants' motion to dismiss with respect to Counts V and VI.

### D. Counts VII, VIII, and IX: Interference with Contractual Relations

In Counts VII and VIII of his complaint, Cody alleges that Harris and Dontron interfered with Cody's contractual relationship with CCP by telling CCP management that Cody had misrepresented "CCP's capabilities to prospective business partners" and by pressuring CCP to terminate its agreement with Cody. In Count IX, Cody alleges that Dontron interfered with Cody's contractual relationship with WVON-AM by banning WVON's general sales manager from Crawford Studios after he was spotted on the premises with Cody.

To state a claim for tortious interference, plaintiff must allege: 1) the existence of a valid and enforceable contract; 2) defendant was aware of the contract; 3) defendant intentionally and unjustifiably induced a breach; 4) the breach was caused by defendant's wrongful conduct; and 5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citations omitted).

Both the CCP and WVON-AM contracts provide by their own terms that they are terminable at-will. The essence of Cody's claims is that CCP and WVON-AM chose to terminate the contracts with Cody after being pressured to do so by Harris and/or Donatron. The defendants argue that CCP and WVON-AM's decisions to terminate their contracts with Cody may not constitute the basis for a tortious interference with an existing contract claim because neither the CCP nor the WVON-AM contract was breached. Indeed, CCP and WVON-AM clearly had a right to terminate their contracts at-will and did not breach their contracts by choosing to do so. Thus, the question presented by the defendants' motion to dismiss is whether a plaintiff may bring a claim for tortious interference with an existing contract where the contract itself was terminable at-will.

Illinois law is clear on this point. A person may not bring a claim for tortious interference with an existing contract where the contract in question is terminable at-will. Rather, "[a]n action for tortious interference with a contract terminable at will is [properly] classified as one for intentional interference with prospective economic advantage." *Anderson v. Anchor Org. for Health Maintenance*, 654 N.E.2d 675, 687 (Ill. App. 2d 1995); *see also Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877 (Ill. 1991) (noting with approval the lower court's decision that an at-will employee may bring an action for tortious interference with perspective economic advantage, but not one for tortious interference with an existing contract); *Accurso v. United Airlines*, 109 F. Supp.2d 953, 962 (N.D. Ill. 2000). Because the CCP and WVON-AM contracts are terminable at-will, it is impossible for Cody to state a claim for tortious interference with an existing contract on the grounds that CCP and WVON-AM chose to exercise their rights to terminate their respective contracts. We thus dismiss the tortious interference claims.

## CONCLUSION

For the foregoing reasons, we grant the defendants' motion with regard to Counts I, II, VII, VIII, and IX and deny the motion with regard to Counts III, IV, V, and VI. It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated 1/21/04