| Minute Order Form (06/97) | | | | |
|---|---|---|---|---|
| **United States District Court, Northern District of Illinois** |

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 934 | **DATE** | 6/7/2004 |
| **CASE TITLE** | \multicolumn{3}{l}{Mark Cody vs. Taft Harris, et al} |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion for summary judgment (33-1) is granted. The status hearing and for filing of the joint pretrial order set for 6/24/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 8 – 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 47 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/7/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
JUN 8 - 2004

| | |
|---|---|
| MARK CODY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 03-CV-934 |
| TAFT HARRIS and DONTRON, INC., d/b/a ) | |
| CRAWFORD BROADCASTING CO., ) | |
| a Texas Corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Mark Cody originally filed a nine-count complaint against Defendants Taft Harris and Dontron, Inc., d/b/a Crawford Broadcasting Co. ("Dontron"). In our order of January 21, 2004, we dismissed Counts I, II, VII, VIII, and IX from Cody's complaint. The defendants have now moved for summary judgment on the remaining claims. For the reasons set forth below, the defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts have been culled from the parties' Local Rule 56.1 Statements of Material Facts. Unless otherwise specified, all facts are undisputed. Plaintiff Mark Cody was the General Sales Manager of radio station WPWX from March 26, 2001 until October 4, 2001. (Def.'s Rule 56.1 Statement ¶ 6.) While employed with WPWX, Cody became interested in creating a website for the station. (Def.'s Rule 56.1 Statement ¶ 13.) He wanted to set up the website under the domain name "www.WPWX.com", but he soon learned that the name already had been registered by a man named William Slembarski. (Def.'s Rule 56.1 Statement ¶ 14.) Cody thus approached Slembarski about the

47

possibility of purchasing the domain name. Negotiations were ongoing between Cody (on behalf of the radio station) and Slembarski in October of 2001, when Cody was terminated from his job. (Def.'s Rule 56.1 Statement ¶ 18.)

Not long after Cody's termination, material of a sexual, and rather graphic, nature began appearing on the www.WPWX.com website. (Def.'s Rule 56.1 Statement ¶ 19.) In early January 2002, Defendant Taft Harris, the General Manager of WPWX, was informed about the site's content during a staff meeting. (Pl.'s Rule 56.1 Statement ¶ 57.) A few days later, on January 10, 2003, Jerry Del Colliano, a reporter from *Inside Radio* (an independent radio trade publication), called Harris to question him about who might have posted the offensive material. (Def.'s Rule 56.1 Statement ¶ 20.) Harris admits that he spoke to Del Colliano and answered several of his questions. On January 11, 2002, an article appeared in *Inside Radio* which discussed the WPWX website and stated, in relevant part:

> General Manager Taft Harris speculates that, "It's got to be a competitor or one particular ex-employee" who he would not name. The perpetrator who according to Harris tried to extort WPWX-FM out of $25,000 to get its URL www.wpwx.com back has not been identified ... the powers at Crawford Broadcasting - a religious broadcaster except for two stations - have decided to find the extortionist and sue them.

(Pl.'s Rule 56.1 Statement ¶ 84.) According to Cody, the "one particular ex-employee" allegedly referred to by Harris is Cody himself. Cody thus brought the present action against Harris and against Dontron (under the theory of *respondeat superior*), alleging that Harris' statements to *Inside Radio* defamed him.

Harris claims that he never made the statements attributed to him in the *Inside Radio* article. Although he admits that he spoke with the reporter, he avers that he told Del Colliano that he did not know who was responsible for the website and that, when specifically asked whether he believed that Cody was behind it, he replied that he had no idea. (Def.'s Rule 56.1 Statement ¶¶ 21-22.) In his deposition testimony, Harris specifically denies having made the statement that "it's got to be a

2

competitor or one particular ex-employee." (Def.'s Response to Pl.'s Statement of Additional Facts ¶ 80.)

The only evidence that Cody offers to prove that Harris actually made the statements attributed to him is the text of the *Inside Radio* article itself. Cody did not submit a deposition or affidavit of either Del Colliano or, if Del Colliano did not himself draft the article, the article's author. Instead, Cody provides the affidavit of his attorney, Eugene K. Hollander, in which Hollander details his attempts to gain information from Del Colliano. According to the affidavit, Del Colliano told Hollander that "without his notes, he would not be able to refresh his memory with respect to the article." (Pl.'s Statement of Facts ¶¶ 120-22.) Hollander further states that Del Colliano had sold *Inside Radio* and that the new owner would be in possession of the notes. Although Hollander contacted the new owner, he was ultimately unable to recover Del Colliano's notes. (Pl.'s Statement of Facts ¶ 124.)

## ANALYSIS

Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

3

Cody alleges that the quotes attributed to Harris in the *Inside Radio* article constituted defamation *per se* and defamation *per quod*. To bring a defamation claim under either theory, a plaintiff must first demonstrate that a defamatory statement has been made. *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (affirming the dismissal of a defamation claim at the summary judgment stage where the plaintiff failed to present any admissible evidence of a defamatory statement). The defendants argue that we should grant summary judgment because there is no admissible evidence in the record before us that would suggest that Harris made any defamatory statements about Cody. We agree.

As an initial matter, the defendants have satisfied their burden of pointing to evidence which would identify the absence of a genuine issue of material fact. Their motion for summary judgment includes Harris' deposition testimony, in which he denied making any accusatory statements about Cody to Del Colliano. Because the defendants have satisfied their initial burden, Cody must now "set forth specific facts showing that there is a genuine issue for trial" in order to survive summary judgment. Fed. R. Civ. P. 56(e). As noted above, the only item of evidence that Cody suggests in support of his assertion that Harris made the statements is the *Inside Radio* article itself.[1] The defendants respond, and Cody concedes, that the portions of the article which purport to quote Harris are hearsay because they are submitted by Cody to prove the truth of the matter asserted, *i.e.*, that Harris actually said what was

---

[1] Cody maintains that there is a genuine issue of material fact for trial because a jury should have the opportunity to evaluate Harris' testimony and determine whether he is credible. This argument ignores the fact that Cody bears the burden of proof at trial, and that no jury could find for Cody based on their mistrust of Harris' testimony. When presented with a similar argument, Judge Learned Hand observed that, "[a]lthough . . . in strict theory a party having the affirmative [burden] might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him." *Dyer v. MacDougall*, 201 F.2d 265, 268 (2d Cir. 1952). We agree with the proposition that a directed verdict would be required in any case where the sole basis for success on the merits lies in disbelieving an adverse witness. We thus find Cody's arguments regarding Harris' credibility unpersuasive.

4

attributed to him in the article. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (holding that quotations from a newspaper article were inadmissible hearsay where they were offered as evidence that the declarant had actually made the quoted statement); *see also Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (striking a newspaper article from consideration at the summary judgment stage on hearsay grounds where the proponent did not submit affidavits or depositions from the newspaper reporter affirming that he wrote the article).

In ruling on a motion for summary judgment, a court may consider only evidence that would be admissible at trial. Fed. R. Civ. P. 56(e) (requiring that supporting affidavits "shall set forth such facts as would be admissible at trial."). According to the Seventh Circuit, "[t]he evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Thus, affidavits and depositions are admissible at the summary judgment stage, as long as the affiant's or deponent's testimony would be admissible if given at trial. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). If he were called to testify at trial, any information that Del Colliano could provide about Harris' statements to him would be hearsay because they would be offered to prove that Harris had actually made the statements included in the article. Because it is the content and not merely the form of the article that is objectionable, we therefore may not consider the article at the summary judgment stage unless it fits into one of the many exceptions to the rule against hearsay.

Cody argues that the article is potentially admissible under two exceptions to the hearsay rule: 1) present sense impression and 2) the residual exception.[2] We evaluate each of these exceptions in turn.

---

[2]At least one court has also considered the possibility that a quotation from a newspaper article could be admissible as a past recollection recorded pursuant to Federal Rule of Evidence 803(5). *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp.2d 590, 596-97 (S.D.N.Y. 2002). That exception would not apply in this case because of the Seventh Circuit's rule that "when a witness's statement is recorded by another, both the witness and the one transcribing the statement must testify as to the accuracy of the

5

Pursuant to Federal Rule of Evidence 803(1), a statement is admissible as a present sense impression if it describes "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." There are three criteria for the admission of a statement as a present sense impression: "1) the statement must describe an event or condition without calculated narration; 2) the speaker must have personally perceived the event or condition described; and 3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001) (citations omitted). In this case, we are without sufficient evidence to evaluate whether these three criteria have been met. Cody has offered no information about the circumstances surrounding the recording of Harris' statements or the drafting of the article. We therefore have no idea whether Del Colliano was motivated to write the article "with calculated narration." We do not even know whether Del Colliano authored the article, so we cannot judge whether the true author heard Harris making the statement. Finally, we have no information as to the temporal lapse between the time Harris allegedly made the statement and the transcription of the statement into the article. *Alexander v. CIT Tech. Finan. Servs.*, 217 F. Supp.2d 867, 883 (N.D. Ill. 2002) (refusing to admit notes of a conversation under the present sense impression exception where there was no evidence presented regarding the time lapse between the conversation and the recording). All of this key information lies with Del Colliano (or the author of the article), but Cody provided neither his affidavit nor his deposition. We cannot speculate about what background information surrounding the article Del Colliano might be able to provide if he were called to testify at

---

report to establish that the statement is the witness's past recollection recorded." *United States v. Green*, 258 F.3d 683, 689 (7th Cir. 2001). Here, it appears that neither Harris nor Del Colliano will likely testify to the accuracy of the newspaper article. The article is therefore not admissible under the past recollection recorded exception to the hearsay rule.

trial. We therefore cannot find the article to be admissible under the present sense impression exception to the hearsay rule.

We thus consider whether the article would be admissible pursuant to the residual exception. The residual exception permits a court to admit evidence not specifically exempted from the hearsay rule if it has "equivalent circumstantial guarantees of trustworthiness" and the court determines that: 1) the statement goes to a material fact; 2) the statement is more probative than any other evidence which the proponent can secure through reasonable efforts; and 3) admission of the evidence best serves the general purposes of the rules and the interests of justice. Fed. R. Evid. 807. A court should use the residual exception only in rare and exceptional cases. *Doe v. United States*, 976 F.2d 1071, 1074 (7th Cir. 1991). Thus, hearsay that does not fall within an enumerated exception is considered presumptively unreliable, and the party proffering the evidence has burden of overcoming that presumption. *Id.* at 1079.

In this case, we are without sufficient information to assess whether the article bears the requisite circumstantial guarantees of trustworthiness to be admissible under the residual exception. Cody bears the burden of demonstrating that the article is trustworthy, yet he has offered no evidence whatsoever that would satisfy his burden. For example, he could have demonstrated the reliability of Del Colliano's work by questioning Del Colliano about the precautions that he takes in interviewing sources or drafting articles to ensure accuracy. Notably, we do not know whether Del Colliano takes notes of an interview simultaneously, nor do we know whether he immediately transcribes those notes into an article. We are likewise left in the dark regarding whether Del Colliano had some ulterior motive for misrepresenting Harris' statements. Without this information, we cannot evaluate whether the article offered by Cody

bears sufficient guarantees of trustworthiness to be admissible.[3] We therefore conclude that the newspaper article is inadmissible. Without it, Cody has not met his burden of setting "forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), because he has not offered any affirmative proof that Harris uttered the defamatory statements attributed to him during his interview with Del Colliano.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: _____

---

[3] Even had Cody provided the missing evidence, we doubt that it would be admissible under the residual exception. In *Jacobson v. Deutsche Bank, A.G.*, a court refused to admit quotes from a newspaper article, even where the proponent of the article had deposed the author about his practice of writing down what was said right after an interview and of having his work reviewed by at least one editor. 206 F. Supp.2d 590, 596 (S.D.N.Y. 2002). There, the court concluded that the process employed by the author was "fundamentally typical of journalists everywhere, and thus provides no support for [the proponent's] contention that [the newspaper] is more trustworthy than the average news account. *Id.* Given the sound reasoning of the court in *Jacobson*, we observe that, even had Cody submitted a deposition or affidavit which catalogues Del Colliano's journalistic method, we most likely would not find it sufficiently trustworthy to overcome the presumption against admission of statements under the residual exception.

8